388

## SHELTON v. UNITED STATES.
### No. 6878.

Circuit Court of Appeals, Fifth Circuit.
Nov. 9, 1933.

Harold J. Bandy, of Granite City, Ill., and Ion L. Farris, of Jacksonville, Fla., for appellant.

Walter W. Sheppard, U. S. Atty., of Savannah, Ga., for the United States.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

The indictment, returned November 6, 1931, is in three counts. The first count charges a continuing conspiracy, beginning the 1st of May, 1931, and extending to the date of the filing of the indictment, to commit the offenses of smuggling, facilitating the transportation, transporting, and selling, intoxicating liquor in violation of the National Prohibition Act. The persons named as conspirators are Earl Shelton, Lester Apgard, G. B. Smith, and Fred Walton. The overt acts are alleged to have been committed "on or about" June 1, June 6, and June 8, all in 1931. The first overt act alleged the selection of Shellbine Landing on the Satilla river, in Camden county, Ga., as a suitable place for landing the liquor; the second the unloading from a boat of 350 cases of liquor at Shellbine Landing; the third the payment by Apgard and Walton of money to Smith as a bribe for protection, Smith being the sheriff of Camden county; the fourth the transportation by Walton, and other defendants to the grand jury unknown, of liquor from Shellbine Landing by means of a truck and two automobiles. The second count alleges that Shelton, Apgard, and Smith unlawfully possessed liquor for sale; and the third count that the same defendants unlawfully transported 100 gallons of whisky in a truck. The second and third counts laid the commission of the offenses charged "on or about" June 8, 1931. The indictment further alleges that Walton was not being prosecuted because he had testified and was immune under title 2, § 30 of the National Prohibition Act (27 USCA § 47).

The trial proceeded against two of the defendants, Shelton and Apgard. At the close of all the evidence each moved for a directed verdict on the grounds (1) that as to the first count, the evidence did not disclose a single continuing conspiracy as alleged, but at best only disclosed two separate and distinct conspiracies, in one of which Apgard participated but Shelton did not, and in the other of which Shelton participated but Apgard did not; and (2) that as to the substantive counts there was a misjoinder of offenses and of parties. The motion was denied and both defendants were convicted and sentenced on all three counts. Shelton alone appeals, and assigns as error the refusal of the court to give the peremptory instruction.

According to the government's evidence, Apgard and Walton in May or June, 1931, brought by boat from the Bahama Islands and landed at Shellbine Landing 320 to 340 cases of intoxicating liquor, and from that landing transported it inland by truck and automobile. Apgard paid to the sheriff $1 per case for protection. Walton, the principal wit-

ness for the prosecution, testified that Shelton did not have anything to do with this first cargo, and there was no other evidence which connects him with this offense. In August, 1931, Shelton and Walton brought in another cargo of liquor from the Bahama Islands, landed and transported it from Shellbine Landing, using two trucks for the transportation. Shelton was introduced to Smith by Walton and paid Smith for protection as Apgard had done. There was no evidence which in any way connected Apgard with this second importation and transportation of liquor.

It is clear, we think, that the conspiracy with which Apgard was connected was completed and at an end before the conspiracy in which Shelton participated was formed. The evidence is quite conclusive that the overt acts alleged were committed to effect the object of the first conspiracy. This is true for the reason that the evidence identifies the overt acts with the handling of the first cargo of liquor; the landing place was selected before the first cargo was smuggled in; the amount of liquor contained in the first cargo corresponded closely with the 350 cases alleged to have been transported; the amount of money paid Smith was about the amount Apgard paid; and Apgard used a truck and an automobile, whereas Shelton used only trucks. Although dates are not ordinarily material and need not be proved as laid, yet the dates here alleged in the overt acts are shown to have reference to the handling of the first cargo of liquor. Apgard was shown to have bribed Smith on the same day that the liquor was unloaded from the boat and transported away from the landing place by truck and automobile, all as alleged in the overt acts. The evidence as to dates but confirms other evidence to the effect that no one of the overt acts refers to the cargo of liquor smuggled in and transported by Shelton and Walton. There is no evidence tending to show that Shelton joined in a conspiracy already formed in May or June, but every circumstance indicates that a new, separate and distinct conspiracy was created by him and Walton sometime in August.

The substantive counts are based upon overt acts alleged in the conspiracy count. They therefore relate to the first cargo of liquor. The evidence, however, disclosed not a joint offense either of unlawful possession or of unlawful transportation, participated in by Shelton and Apgard. On the contrary there was proven as to each of these counts that two separate, distinct offenses were committed, one by Apgard and the other by Shel-

ton, at different times. With the evidence in this condition it was error to refuse to grant Shelton's motion for a directed verdict. A result of the denial of that motion is that Shelton was convicted of offenses with which he was not charged in the indictment.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.